[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF CASE
The plaintiff is the administratrix of the estate of Yolanda Cecarelli and the executrix of the estates of Louis A Cecarelli and Alfredo Cecarelli. The plaintiff and the defendant are the daughters of Louis A. and Yolanda Cecarelli, and the sisters of Alfredo Cecarelli.
In May of 1996, the defendant filed a claim against the estate of Louis A. Cecarelli asserting ownership of stocks and bonds which the plaintiff alleges to be property of the estate.
Though the claim was made against the estate of Louis A. Cecarelli, some securities are listed in the name of Yolanda Cecarelli, others in the name of Alfredo, and still others include the name of the plaintiff.
The plaintiff, on behalf of all three estates, seeks a declaratory judgment to determine the rightful owners of the securities and an order requiring the defendant to deliver the same in accordance with that judgment. CT Page 12567
 FACTS
The original claim filed by the defendant in 1996 set out her claim as follows:
 "3. I currently am in possession of certain securities which were given to me by Louis A. Cecarelli to own as my own. I held these items in my sole possession and control.
 4. I am not named as a beneficiary in the Will of Louis A. Cecarelli, but I was given these securities as aforesaid.
 5. I also used my own funds to purchase U.S. Savings Bonds for the decedent, and others, with his knowledge. Louis A. Cecarelli knew that I did this and intended for me to own these Bonds as my own upon his death."
This claim also included the following prayer for recovery:
 "9. Louis A. Cecarelli further induced me to care for his sister, Mary P. Anici, in my own home and at my own expense for several years. He agreed to reimburse me for this care. The cost of such care exceeds $100,000.00, and a claim for that amount is hereby made against the general assets of this estate.
 10. I hereby make a claim to the Estate of Louis A. Cecarelli, against the Estate and its general assets, for the payment of the equivalent amount of the face value of these items described herein or a final determination that such securities are my sole property."
On February 17, 1998, the defendant filed a special defense claiming to be the "rightful owner by way of an inter vivos gift." When the case was reached for trial, the defendant moved to amend her special defense. The amendment was permitted and the defendant then asserted that:
 ". . ., the defendant is the rightful owner by way of an inter vivos gift from Mary and Marino Anici and these securities should be held in constructive trust for benefit of the defendant."
Mary and Marino Anici were an aunt and uncle of the parties. CT Page 12568 Both are deceased.
While Yolanda Cecarelli, the first to die of the three, died intestate, both Louis A. Cecarelli and Alfredo Cecarelli, who died in that order, left executed wills. Louis had executed several wills and in all of them, including the one admitted to probate, the defendant was specifically excluded. Alfredo also excluded the defendant from the will admitted to probate on behalf of his estate.
The defendant unsuccessfully contested the wills of both Louis and Alfredo Cecarelli. She also filed a claim against the estate of Louis on behalf of the aunt, Mary Anici. This claim was denied.
The defendant and her late father, Louis A. Cecarelli, were involved in litigation prior to his death. In 1987, Louis apparently executed a trust agreement which placed all of his real property in the control of the defendant and a co-trustee. The father attacked this trust in court and it was rescinded in 1989.
The father also sued the defendant over the proceeds of a certificate of deposit and effected recovery.
 DISCUSSION I
A. The defendant's claim of being the recipient of an inter vivos gift is based entirely on her unsubstantiated testimony. Aside from the fact that she has physical possession of the securities, there isn't any memo, letter, or document to support her position.
According to the defendant, the father told her he was purchasing these securities with money he received from Mary and Marino Anici and putting it in his name "to avoid conflict within the family."
This does not explain why there are some stocks claimed by the defendant in the sole name of Yolanda Cecarelli, in the joint names of Louis and Alfredo, and in the joint names of Louis and the plaintiff. CT Page 12569
Similarly, the U.S. Savings Bonds, which the defendant claims were bought for her, appear in the names of Louis and Yolanda, Louis and Alfredo, Louis and Jo-Ann (the plaintiff), and Yolanda and Fred (Alfredo).
And, while the defendant testified as to the bonds that she was "always the real owner, from her 16th birthday. . . .," an examination of the plaintiff's Exhibit P, a log of bond purchases kept by the mother, Yolanda Cecarelli, reveals that the bonds were purchased as early as 1948 — when the defendant was 5 years old! This record shows purchases for Alfredo, Jo-Ann, the defendant, etc. Many were purchased when these parties were children.
Though she asserted no claim against her mother's estate, the defendant now states these bonds were purchase by her with money given to her and placed in these various names so as to share with her brother and sister. If that were true, then one could argue she had made a gift to those persons in whose names she placed the bonds. And, while she testified that the "didn't want them (the bonds) in her name," the fact is she did possess numerous bonds in her name and they were not a subject of her claim.
To support her contentions, the defendant has offered evidence in the form of two checks and a receipt.
The receipt was apparently issued to Louis A. Cecarelli for $5,750.00 for the purchase of 500 shares of Amity Bank stock, "for Joyce C. Garofalo." However, the defendant's claim is for 3,000 shares of Amity Bank stock. This receipt is not probative of the claim made.
The defendant offered Exhibit 2, a check on her own bank account to the "Shelton Savings Loan for $43,125.00 dated August 20, 1986. The memo portion bears this: "stock — Dad." While the word "stock" appears similar in appearance, color and handwriting to the balance of the writing on the check, the "-Dad" is in stark contrast to the rest of the writing on the check and appears to have been written with a different pen.
While the defendant is claiming 2,000 shares of stock in Shelton Savings Loan, the court is left with no evidence to support the contention that Louis A. Cecarelli's 2,000 shares are this defendant's property. CT Page 12570
The other check, Exhibit 1, was offered by the defendant to support her claim that she had given her father $85,750 when he demanded it. Purportedly, her father demanded this sum to pay for "capital gains payments (taxes)," as stated on the memo portion of the check, and represented taxes he had paid on the shares of stock she owned but registered in his name. Again, the above quoted portion inscribed on the check is curious because the person drawing the check originally wrote "stock." The quoted portion appears to have been added with a different pen.
That this is the case is made apparent by the plaintiff's Exhibit GG, a page from Louis A. Cecarelli's check register, to which is appended his accountant's note to the effect that the $85,750 check was to purchase First Federal Bank stock for the defendant. A deposit ticket for this check shows it deposited in Mr. Cecarelli's account. This stock is not part of the defendant's claim.
The stated explanation for Mr. Cecarelli demanding this money from the defendant is puzzling to say the least. If it is true, then it stands for the proposition that Mr. Cecarelli enjoyed the benefit of ownership of the shares of stock, collecting the dividends and accruing the capital gains. This is inconsistent with the defendant's claim that she owned the shares of stock. At best, it might be presumed that by retaining the benefits of ownership, Mr. Cecarelli did not make a gift to the defendant, but only effected a transfer to take effect after his death!
B. The plaintiff has offered an explanation for the defendant's possession of the stocks and bonds. She testified that the numerous stock certificates and bonds were at the parents' residence at least until the death of Mrs. Cecarelli in 1975. When Mr. Cecarelli complained about certificates and bonds disappearing, extensive searches were conducted to find them. When these searches were unsuccessful, the plaintiff wrote to the federal agency involved at her father's request and ultimately most of the bonds were re-issued.
Extensive correspondence was conducted on behalf of Mr. Cecarelli with respect to the missing stock certificates. (See Exhibits S-X). When he was advised that a surety bond would have to be posted to protect the issuing company against future claims due to the appearance of the lost certificates, Mr. Cecarelli balked and the re-issue process was never completed. CT Page 12571
However, the plaintiff has presented a substantiated record on which to support the conclusion that these stocks and bonds were removed from the Cecarelli residence, that Mr. Cecarelli considered them lost or stolen, that he sought replacement, and that in all likelihood the defendant removed them without his permission.
C. The court finds it significant, particularly in a case where witness credibility is a substantial element, that the defendant has offered so many versions of her claim.
Originally, she claimed the securities were given to her by her father and that she used her own funds to purchase the savings bonds, many dating back to her childhood. Then, she claimed to be "the rightful owner by way of an inter vivos gift." At trial, she was permitted to amend her pleading and she set out her claim of a constructive trust. This was the first time she mentioned the role of Mary and Marino Anici in this series of transactions. All the parties whose testimony would bear on the validity of this constructive trust are dead.
This last version of her claim is not consistent with the substantial evidence of the plaintiff as to Mr. Cecarelli's efforts to locate his securities and obtain replacement for what he thought were lost certificates.
In brief, the statement of facts set out in her brief by the defendant is significantly inconsistent with the facts elicited at trial.
 CONCLUSION
As noted by the defendant in her brief, one claiming a constructive trust against a decedent's estate must establish the elements "by clear and satisfactory evidence." Kukansis v. Jasut,169 Conn. 29, 32 (1975).
The evidence offered by the defendant falls far short of meeting this burden, on the contrary, it fails to support even a finding of probable cause. The court does not find the defendant to be a credible witness and does not accept her versions of the events and her explanation of how she came into possession of the securities she now claims as her own. On the evidence presented by the plaintiff and faced with the suspicious and discredited evidence of the defendant, the court concludes that the defendant CT Page 12572 has fabricated her claim to these stocks and bonds, that no inter vivos gift was ever made, and that the parties named on the certificates and bonds are the true registered owners.
The court finds the issues in favor of the plaintiff and declares judgment that the rightful owners of each stock certificate and bond are the persons in whose names they are registered.
The defendant is ordered to deliver any and all stock certificates and bonds to the plaintiff or her attorney forthwith.
The plaintiff is entitled to taxable costs.
Anthony V. DeMayo Judge Trial Referee